# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GARY L. RUNGE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 6:10-cv-03402-NKL |
| MICHAEL ASTRUE, Commissioner of Social Security | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff Gary Runge's Social Security Complaint [Doc. # 1]. For the following reasons, the Court reverses and remands to the Administrative Law Judge ("ALJ") for correction of error.

## I. Background[1]

This suit involves Plaintiff Runge's application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401, et seq. On August 26, 2010, following a hearing, an ALJ found that Runge was not under a "disability" as defined in the Act. Runge appeals from that decision.

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

### A. Medical Evidence

The record shows that Plaintiff Runge had been injured in a number of work-related accidents prior to January 27, 2005, his alleged onset of disability, including motor vehicle accidents in 1999, 2002, and 2004. [Tr. 261, 283, 462, 533]. After an accident in July 2004, Runge claimed that his back and neck pain was so severe that he was unable to work. However, treatment notes indicate that Runge did not appear to be in severe pain and his neurological functions were intact, and he was released to work. Following the July 2004 accident, Runge met with Curtis Mather, D.O., who reviewed x-rays of his elbows and administered injections of pain medication. Dr. Mather indicated that Runge had a history of depression and anxiety.

On January 27, 2005, Runge suffered another work-related accident when about 600 or 800 pounds of cable fell on his arms, crushing his elbows and causing him to fall backwards. On February 15, 2005, Runge reported to Jeffrey L. Woodward, M.D., who noted Plaintiff's multiple prior work-related claims, and that Runge's complaints of headaches and back and elbow pain existed before the January 2005 accident. Dr. Woodward reviewed Runge's medical records dating back to 1999 and could not detect any recent significant changes.

On February 24, 2005, Plaintiff Runge met with David Weems, D.O., a family practitioner, who noted that Runge still had "major issues at work which give him the anxiety, stress, and secondary insomnia." [Tr. 414].

In March and April 2005, Runge told chiropractor Kevin Bays, D.C., that he had neck pain and back pain for six years, but it had become worse in the past two months. An x-ray of Runge's lumbar and cervical spine showed mild facet degeneration at C3-C4, contributing to low-grade unilateral intervertebral foraminal narrowing, early lumbar spondylosis, mildly hypolordotic lumbar spine, and pelvic unleveling with a compensatory right lumbar curvature.

Concerned about depression, Plaintiff Runge spoke with Dr. Weems on May 12, 2005. Dr. Weems encouraged him to go to the emergency room. The next day, Runge went to the emergency room where he was given Xanax.

A lumbar x-ray on May 26, 2005, showed slight degenerative changes but was otherwise normal. After reviewing x-rays, Dr. Woodward released Runge to full-time regular work with no physical restrictions.

Plaintiff Runge met with David Hicks, M.D., an orthopedic surgeon, on September 29, 2005, complaining of elbow and hand pain and numbness. A MRI of Runge's elbows on October 4, 2005 revealed partial tearing involving common flexor tendons of both the right and left elbow, normal signal intensity in the ulnar nerve, and mild tendinopathy of the triceps tendon.

On March 23, 2006, a MRI of the cervical spine showed spondylosis and mild posterior broad based disc bulges and mild left-sided neural foraminal narrowing. On April 19, 2006, Runge underwent a series of tests in his upper extremities at a hand therapy and

orthopedic rehabilitation center. The testing showed some deficiencies, and Runge was given a home exercise program.

Plaintiff Runge met with Papaiah Sreepada, M.D., a neurologist, on April 26, 2006. Dr. Sreepada could not fit Runge's complaints of elbow, neck, and back pain into any particular neurological disease, so he recommended treatment with pain medication.

In May 2006, Dr. Sreepada noted that Runge appeared anxious and depressed. In June 2006, a functional capacity evaluation conducted over a two-day period showed that Runge's range of motion and strength were within normal limits. Dr. Sreepada determined that Runge could perform work at the medium exertional level, but he should avoid repetitive elbow flexion and extension.

On August 8, 2006, Steven T. Akeson, Psy.D., performed a consultative psychological examination of Runge and diagnosed dysthymic disorder and anxiety disorder. Dr. Akerson's extensive examination included review of Runge's medical evaluation; a personal, social, and psychiatric history; discussion of activities of daily living; and testing to assess mental control, memory, attention and concentration, and quality of thinking. Dr. Akeson opined that Runge's ability to perform work-related functions seemed unimpaired.

On August 31, 2006, Runge underwent an assessment by Dr. K. Burstin, who found medically determinable impairments that did not precisely satisfy the diagnostic criteria - but substantiated the presence of - Dysthymic d/o, Anxiety d/o NOS, and Pain d/o.

At the request of Plaintiff Runge's counsel, on July 23, 2008, David T. Volarich, D.O., conducted a consultative examination of Runge with regard to work-related injuries

4

and prepared a 24-page written report. The report included Runge's work history, details of accidents that predated the alleged onset of disability, a summary of Runge's present complaints, physical examination results, and a summary of disability ratings related to earlier accidents.

B.   **Administrative Hearing**

Plaintiff Runge's administrative hearing was held on November 10, 2008. Runge testified that he had completed nearly 12 years of school and had past work as a cable installer and telephone lineman. Runge stopped working in January 2005, after a work-related accident that crushed his elbows and broke a bone by his ulnar nerve. Runge claimed that he lost strength and nerve functioning in his right arm, and he had neck, back, foot, and knee pain. Runge used to take oxycodone but no longer took any medication for pain. He stated that he had been treated for depression about seven years previously, and that he became severely depressed after the January 2005 accident. He said that his depression had improved in the past month, and that he felt "100 times better." [Tr. 49-50]. Runge had been a professional drummer for 25 years and had recently taken up the bass, although he quit because the fingers on his left hand hurt too much.

The ALJ asked a vocational expert about a person of Runge's age, education, and work history, who could lift 20 pounds occasionally and 10 pounds frequently, stand, walk, or sit six hours in an eight-hour workday, and occasionally push and pull with his arms, bend, stoop, crouch and squat, kneel and crawl, but could not work at heights or around hazardous,

unprotected moving equipment. The vocational expert testified that such an individual could perform light, unskilled work such as a cashier or sales attendant.

A supplemental hearing was conducted on February 9, 2009. During that hearing, Runge stated that he had been examined by Dr. Woodward, who spent about four or five minutes total conducting the examination.

### C. The ALJ's Decision

The ALJ found that Runge had the severe impairments of "degenerative arthritis in the cervical and lumbar spine and bilateral tendonitis in the elbows." [Tr. 11]. However, the ALJ did not find Runge's depression or anxiety to be severe. [Tr. 12]. The ALJ determined that Runge did not "have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [Tr. 13].

The ALJ found that Runge retained the Residual Functional Capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) except that he can only occasionally push or pull with his arms and can only occasionally stoop, bend, crouch, squat, kneel, and crawl." [Tr. 13]. The ALJ added that Runge could not work at "unprotected heights or in close proximity to hazards such as unprotected moving machinery." *Id.*

The ALJ concluded that, while Runge was unable to "perform any past relevant work" due to his RFC, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Tr. 14-15]. Because Runge was able to transition to other work which existed in significant numbers, he was found to not be disabled. [Tr. 15].

## II. Discussion

### A. Standard of Review

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### B. Whether the ALJ Erred by Finding that the Claimant's Mental Impairments Were Not Severe

Plaintiff Runge asserts that the ALJ erred by not finding his mental impairments to be "severe" at step two of the five-step sequential evaluation process. Runge has the burden of proving that his impairment or combination of impairments is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). It is not particularly difficult to meet this standard, but the standard is not "toothless." *Id.* at 708. Taking this standard into account and considering the record as a whole, the Court concludes that there is not substantial evidence to support the ALJ's finding that Runge's mental impairments were not severe.

"Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987). If the ALJ cannot clearly determine what effect an impairment would have on a claimant's ability to do basic work activities, "the sequential evaluation process should not end with the not severe evaluation step." *Id.*

Here, Runge presents an extensive medical record indicating his diagnosis and treatment for multiple mental health impairments. [Tr. 284, 347, 413-414, 409, 462-466, 471, 478, 508, 541-543]. Additionally, Runge testified about the effects of his depression at his hearing. [Tr. 47-50]. Given the low hurdle for determining severity at step two of the sequential evaluation process, the Court concludes that the ALJ's finding that Runge's depression is not severe is not supported by substantial evidence in the record as a whole, This matter is therefore remanded so the ALJ can properly reconsider the severity of Runge's mental impairments, consistent with this Court's order.

**C.     Whether the ALJ Erred by Failing to State Specific Reasons for the Claimant's Credibility Finding**

Runge next argues that the ALJ erred by failing to articulate the specific bases for his credibility findings. "It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" SSR 96-7p, 61 Fed. Reg. 34483, 34484 (July 2, 1996). The decision "must contain specific reasons for the finding on credibility, supported by the evidence in the

case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Here, the ALJ merely states that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [Tr. 14]. While the defendant does point to some inconsistencies between Runge's testimony and the medical records, the ALJ has failed to provide, much less to provide with specificity, the reasons for his credibility determination.

The Court remands so that the ALJ may properly comply with SSR 96-7p.

**D.	Whether the ALJ Erred by Failing to Give Appropriate Weight to the Agency's Consulting Experts**

Plaintiff Runge argues that the ALJ erred by failing to give appropriate weight to the "Agency's consulting physicians." [Doc. # 12, at 15]. Specifically, Runge complains that the ALJ gave the opinions of Dr. Burstin and Dr. Akerson greater weight than examining physician, Dr. Volarich.

The record must be evaluated as a whole. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The ALJ is "charged with the responsibility of resolving conflicts among medical opinions," and may "reject the conclusions of any medical expert . . . if they are inconsistent with the record as a whole." *Id.* (quotations omitted).

9

In July of 2008, Plaintiff Runge was examined by Dr. Volarich, at the request of his attorney, for the purpose of determining his functional capacity. [Tr. 526-554]. The ALJ gave "little weight to the opinions expressed by [Dr. Volarich] since his report is internally inconsistent." [Tr. 14]. The ALJ explained that he found Dr. Volarich's opinions to be contradictory, ambiguous, general, and vague, and then cited examples from Dr. Volarich's report to illustrate. *Id.* For example, the ALJ noted that Dr. Volarich opined that Runge was "unable to engage in any substantial gainful activity," but then wrote that he had "no objection with the him attempting to return to work based on the limitations listed at the end of this report." [Tr. 14, 550].

The ALJ properly evaluated the contradictory medical opinions, assigned the weight to each opinion as he found appropriate, and fully explained his reasoning in the decision. Sufficient evidence supports his conclusion..

### E. Whether the Hypothetical Questions Posed to the Vocational Expert Were Inadequate

Finally, Plaintiff Runge argues that the hypothetical question posed to the vocational expert was inadequate because it did not include his impairments of pain, depression, and anxiety. The ALJ is required to include "all the claimant's impairments supported by substantial evidence" when crafting an appropriate hypothetical question for the vocation expert. *Finch*, 547 F.3d at 937.

For the reasons explained above, the Court has already directed the ALJ to reconsider the severity of Runge's depression and anxiety. On remand, the ALJ's hypothetical question must be consistent with that finding.

## III. Conclusion

It is hereby ORDERED that the matter be REMANDED to the ALJ for reconsideration consistent with this order.

s/ NANETTE K. LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

Dated: August 2, 2011  
Kansas City, Missouri